UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CASEY COUGAR MELLENCAMP                                                PLAINTIFF

v.                                                    CIVIL ACTION NO. 3:07-CV-325-S

LOUISVILLE/JEFFERSON COUNTY                                          DEFENDANTS
METRO GOVERNMENT, et al.

## MEMORANDUM OPINION

This matter is before the court on the motion of defendants Louisville/Jefferson County

Metro Government ("Metro"), Louisville Metro Department of Corrections ("Corrections"),[1] Officer

Robert Vincent, in his individual and official capacities ("Vincent"), and Officer Tim Dobson, in

his individual and official capacities ("Dobson") (hereinafter collectively, "Defendants") for

summary judgment (DN 39). Plaintiff Casey Cougar Mellencamp ("Mellencamp") has responded

(DN 43) and Defendants have replied (DN 44). For the reasons that follow, Defendants' motion for

summary judgment will be granted in part and denied in part.

BACKGROUND

Mellencamp was arrested on June 18, 2006 for disorderly conduct and public intoxication

and brought to Corrections, where he alleges that while being searched, three or more officers

assaulted and used excessive force against him. He alleges that the assault was without cause or

---

[1]The court notes right away that Corrections is not *sui juris* and does not have the
capacity to be sued. Corrections is a department and division of Metro and has no separate legal
identity, therefore it is not a person within the meaning of 42 U.S.C. § 1983. Accordingly, all of
Mellencamp's claims against Corrections will be dismissed and will not be further discussed
hereinafter.

provocation and that the officers recklessly used physical force in order to cause him injury. Mellencamp alleges that at no time during the assault did he either resist or attempt to resist the officers and that he suffered injuries to his right leg and ankle, headaches, emotional distress, and mental pain and suffering. Mellencamp also alleges that he was denied appropriate medical treatment for his injuries.

The incident that gave rise to this action occurred in the jail's grill area, where incoming inmates are frisk-searched for contraband. Vincent was the grill officer in charge. To conduct a frisk search, the grill officer takes the inmate's belongings and orders the inmate to stand on a mat, face and put his hands against the wall, and spread his feet shoulder-width apart.

Defendants assert that Mellencamp was disruptive upon being booked into the jail and became increasingly unruly after he was brought into the grill area. Defendants assert that Vincent instructed Mellencamp to spread and face the wall several times but Mellencamp was noncompliant. Officer Donna Gentry ("Gentry") came into the grill area to assist Vincent with the search but Mellencamp disobeyed her commands, as well. To advance the search, Vincent physically took hold of Mellencamp and positioned him facing the wall. Mellencamp made a sudden turn away from the wall, which Vincent considered an act of aggression, and Vincent took Mellencamp to the floor to control him. Gentry handcuffed Mellencamp, and other officers were called in for assistance. The officers held Mellencamp on the floor and searched him.

Dobson was one of the other officers who came into the grill to assist. Dobson squatted at Mellencamp's feet and administered a control technique where he crossed Mellencamp's legs and applied pressure, pushing Mellencamp's legs back towards his buttocks. Mellencamp alleges that Dobson broke his ankle by doing so. Mellencamp alleges that Dobson's use of force was

-2-

unnecessary and excessive because he was already under complete control and was not resisting when Dobson acted.

Mellencamp admits that he was intoxicated at the time of the incident and has little memory concerning it.  However, the incident was captured by the jail's video camera and the tapes were submitted to the court for review.  *See Motion for Summary Judgment*, Index to Exhibits Conventionally Filed, Exhibit 10, DVD of Videotapes of Incidents in Real Time; Exhibit 10A, Affidavit by Officer Ronald Vincent; Exhibit 10B, Affidavit by Corrections Information Systems Manager Maurice Stepteau.

After the officers finished conducting their search of Mellencamp, Vincent, Dobson, and Officer Jennifer Eubanks ("Eubanks") escorted Mellencamp back to rear security and put him in a single cell.  Mellencamp alleges that he was left in the cell with pain and without medical attention for four to five hours.  Defendants assert that nurse Barbie Woods ("Woods") was summoned to assess Mellencamp for injuries shortly after he was placed in the cell but Mellencamp refused treatment.  Defendants assert that Mellencamp's combativeness prevented Woods from making an assessment.  Mellencamp was seen by another nurse approximately four hours later and sent to the University Hospital Emergency Room for treatment, where he was diagnosed as having a trimalleolar ankle fracture.  *Id.*, Exhibit 12, University Hospital X-Ray Reports dated 6-18-2006 and 6-19-2006.  Mellencamp alleges that his medical bills exceed $35,000.

Mellencamp was charged with Attempted Assault in the Third Degree in connection with the incident in the grill area.  He pled guilty and was sentenced to 365 days in jail, with 345 days conditionally discharged for two years, and 20 days to serve, with 17 days already served credited towards the 20 days.

Mellencamp filed this action pursuant to 42 U.S.C. § 1983, asserting claims against Vincent

and Dobson for violations of the Fourth, Eighth, and Fourteenth Amendments for subjecting him

to unconstitutional use of force and denying him medical care.   Mellencamp also asserts

unconstitutional policy and custom and failure to train claims against Metro.   Additionally,

Mellencamp asserts state law claims for assault and battery, intentional infliction of extreme

emotional disturbance, negligence, and gross negligence.

Defendants now seek summary judgment on Mellencamp's Section 1983 and state law

claims.  Defendants argue that Mellencamp cannot show that Vincent or Dobson used force that was

excessive or unreasonable, or denied Mellencamp medical care, and that Vincent and Dobson are

entitled to qualified immunity.  Defendants also argue that Mellencamp cannot demonstrate that a

Metro policy or custom directly caused his injury.  Defendants further argue that Mellencamp cannot

prove any of his state law claims.

The court has federal question jurisdiction over the claims in this action arising under 42

U.S.C. § 1983 pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the related state law

claims pursuant to 28 U.S.C. § 1367.

DISCUSSION[2]

A party moving for summary judgment has the burden of showing that there are no genuine

---

[2]The court will deny Defendants' request that we reconsider our memorandum opinion and order dated June 4, 2008, denying Defendants' motion to dismiss all federal claims alleging the excessive use of force by Vincent and Dobson on the basis that such claims are "inextricably intertwined" with Mellencamp's conviction for Attempted Assault in the Third Degree under *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), or under principles of collateral estoppel. *See Potvin v. City of Westland Police Department*, 2006 WL 3247116 (E.D. Mich. Nov. 7, 2006); *Schreiber v. Moe*, 445 F. Supp. 2d 799, 814 (W.D. Mich. 2006); *Warner v. McMinn County, TN*, 2007 WL 3020510, at *12 (E.D. Tenn. Oct. 11, 227).

issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The dispute also must be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 248. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

Mellencamp alleges that Vincent and Dobson subjected him to the unreasonable and excessive use of force, cruel and unusual punishment, and denied him medical care in violation of the Fourth, Eighth, and Fourteenth Amendments.

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). The Fourth Amendment is not applicable to this case. The Fourth Amendment protects the rights of individuals to be free from the excessive use of force before and during arrest. Here, the alleged excessive use of force

occurred after Mellencamp was arrested and had already been seized through his incarceration. Therefore, Mellencamp's Fourth Amendment claims will be dismissed. *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002); *McDowell v. Rogers*, 863 F.2d 1302, 1306 (6th Cir. 1988).

The Eighth Amendment is also not applicable to this case. The Eighth Amendment protects individuals from the infliction of cruel and unusual punishments after conviction. *Graham* at 395, n. 10; *Ingraham v. Wright*, 430 U.S. 651, 671, n. 40, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977). At the time of the alleged excessive use of force and denial of medical care, Mellencamp had not been convicted of any offense for which he had been arrested. Therefore, Mellencamp's Eighth Amendment claims will be dismissed.

The substantive component of the Fourteenth Amendment's due process clause is the most appropriate lens through which to view Mellencamp's excessive force claim. *Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001) (*citing County of Sacramento v. Lewis*, 523 U.S. 833, 843-44, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)). The Fourteenth Amendment protects individuals from governmental conduct that "shocks the conscience." Whether governmental conduct shocks the conscience depends on the factual circumstances of the case. *Id.*

> More specifically, in situations where the implicated government actors are afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action. . ., their actions will be deemed conscience-shocking if they were taken with "deliberate indifference" towards the plaintiff's federally protected rights. In contradistinction, in a rapidly evolving, fluid, and dangerous predicament which precludes the luxury of calm and reflective pre-response deliberation. . ., public servants' reflexive actions "shock the conscience" only if they involved force employed "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Id* (citation omitted).

For example, in the context of governmental conduct by jail officials, a jail guard who witnesses two inmates assaulting a third inmate and does nothing to stop it until the victim is

seriously hurt exhibits deliberate indifference that shocks the conscience. On the other hand, the conduct of a prison guard who incapacitates an inmate in order to quell a prison riot does not shock the conscience.

The incident that transpired in the grill area was hardly equivalent to a prison riot. However, it was analogous in that the situation demanded that Vincent and Dobson react and respond in real time. Vincent's act of taking Mellencamp to the floor was a prototypical "reflexive action." Dobson's decision to control Mellencamp's legs was more measured by comparison because Mellencamp was less of an immediate threat on the ground; nonetheless, the situation was still unfolding when Dobson acted. Therefore, the heightened shocks-the-conscience standard applies to the excessive force analysis here. Vincent's and Dobson's conduct shocks the conscience only if they used force maliciously and sadistically for the purpose of harming Mellencamp.

Given the facts of this case, particularly in light of the video evidence, a reasonable jury could not find that Vincent's use of force against Mellencamp was malicious, sadistic, and for the purpose of causing harm. Vincent took Mellencamp to the floor in self-defense. Mellencamp does not allege that he was injured by the takedown. Vincent had nothing to do with Mellencamp's ankle. Therefore, Mellencamp's claim against Vincent for excessive use of force will be dismissed.

However, construing the evidence in a light most favorable to Mellencamp, a reasonable jury could find that Dobson's use of force was excessive due to the minimal risk of harm that Mellencamp posed on the ground. Although Dobson may have had reasonable concerns regarding the safety of his fellow officers and the need to control Mellencamp, those concerns did not justify the force that Mellencamp alleges Dobson used, injuring his ankle.

Defendants argue that Dobson is entitled to qualified immunity for his use of force against

Mellencamp.  Qualified immunity affords protection from damages liability to public officers and

employees for good faith acts performed in the exercise of their discretionary functions in legally

uncertain environments.  *Yanero v. Davis*, 65 S.W.3d 510, 521-22 (Ky. 2001).  Dobson's use of

force against Mellencamp was performed within the scope of his discretionary authority in a legally

uncertain environment.  As a Corrections officer, Dobson was authorized to use physical force

against Mellencamp for the purpose of maintaining or restoring discipline and good order pursuant

to KRS 503.110(2).  However, Mellencamp alleges that Dobson acted in bad faith, forfeiting his

right to qualified immunity here.  *Yanero* at 523.  The test for bad faith in the qualified immunity

context is the same heightened shocks-the-conscience standard applied herein above in the excessive

use of force analysis.  *Darrah*; *see also Whitley v. Albers*, 475 U.S. 312, 320, 106 S. Ct. 1078, 89

L. Ed. 2d 251 (1986); *Danese v. Asman*, 875 F. 2d 1239, 1243 (6th Cir. 1989).  Because there are

genuine issues of material fact as to whether Dobson used excessive force, Defendants' motion for

summary judgment on Mellencamp's claim against Dobson on the basis of qualified official

immunity will be denied.

The Fourteenth Amendment is the appropriate lens through which to view Mellencamp's

denial of medical care claims, as well.  Because pretrial detainees are entitled to the same right to

medical care as convicted prisoners, Fourteenth Amendment analysis borrows the Eighth

Amendment's deliberate indifference standard.  *Roberts v. City of Troy*, 773 F.2d 720, 722 (6th Cir.

1985); *see also United States v. Budd*, 496 F.3d 517, 530 (6th Cir. 2007).  To succeed on his denial

of medical care claim, Mellencamp must establish that Vincent and Dobson were deliberately

indifferent to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104-06, 97 S. Ct. 285, 50

L. Ed. 2d 251 (1976).  An official can be said to have been deliberately indifferent when he

disregards a known risk to serious medical needs. *Farmer v. Brennan*, 11 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

Even assuming that Vincent and Dobson knew that Mellencamp's ankle had been injured, which is disputed, there is no evidence that they disregarded Mellencamp's medical needs. It is undisputed that Nurse Woods was summoned to Mellencamp's cell shortly after the incident in the grill. However, she was unable to complete an assessment because Mellencamp was disruptive and refused medical attention. *Motion for Summary Judgment*, Exhibit 11, Deposition of Jennifer Eubanks, pp. 24-28. As Mellencamp requested, Eubanks allowed him to sleep off some of the effects of his intoxication. *Id.* Mellencamp was seen by another nurse less than four hours later and sent to the hospital. Vincent and Dobson did not disregard a serious risk to Mellencamp's health or safety. *Farmer* at 837. Therefore, Mellencamp's claims for denial of medical care will be dismissed.

Mellencamp alleges that Metro failed to train its officers and has unconstitutional policies and procedures regarding the use of force and provision of medical service for inmates. "In *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), [the Supreme Court] decided that a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983. It is only when the execution of the government's policy or custom. . . inflicts the injury that the municipality may be held liable under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) (internal quotation marks and citations omitted). To impose liability on a municipality under § 1983, a plaintiff must identify a municipal policy or custom that directly caused his constitutional injury. *Board of County*

*Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). A municipal policy is a "statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). A municipal custom is a practice, although not authorized by written law, so permanent and well settled as to have the force of law. *Id.* at 690.

A municipality may be held liable for failure to train only where the inadequacy amounts to a municipal policy of deliberate indifference to the rights of persons with whom the officials come into contact. *Canton* at 388. To impose liability on a municipality for failure to train, a plaintiff must do more than merely show that a training program is inadequate. A plaintiff must show that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Id.* at 389-390.

Defendants argue that Mellencamp has not shown that a Metro policy or custom directly caused him constitutional injury. Mellencamp alleges that Metro's "unwritten policy to cross individuals [sic] legs and apply pressure" is unconstitutional and evidences inadequate training in Corrections officers' use of force. *Response* at 22. Dobson admits that he was trained in the technique of crossing an inmate's legs and applying pressure in order to gain control over the inmate at his second academy. *Motion for Summary Judgment*, Exhibit 9, Deposition of Tim Dobson, pp. 17-18. However, as a matter of law, there is nothing, per se, unconstitutional about the use of the

technique at issue.  Mellencamp has failed to show that Dobson's training in how to administer the technique was so obviously inadequate and likely to cause constitutional harm that Metro was deliberately indifferent.  Mellencamp merely alleges that Dobson used excessive force.  Similarly, Mellencamp has not shown that Metro's policies regarding the provision of medical service for inmates are unconstitutional; rather he alleges only that Vincent and Dobson failed to comply with those policies.  Such allegations, even if true, do not give rise to liability against Metro.  *Canton* at 385.

In any event, there is no evidence that Vincent and Dobson failed to follow Metro's inmate medical policies.  Moreover, Metro has policies that govern the use of force by Corrections officers against inmates.  *Motion for Summary Judgment*, Exhibit 17, Corrections Policy 5.09.  Corrections officers use force consistently with the degree of severity of the particular situation confronting the officer and the degree of resistance demonstrated by the inmate.  *Id.* at pp. 9-10.  Mellencamp has failed to identify a Metro policy or custom that directly caused him injury.  Mellencamp has also failed to present any evidence that Metro failed to train its officers regarding the use of force or provision of medical service for inmates.  Mellencamp's federal claims against Metro will be dismissed.

In addition to his Section 1983 claims, Mellencamp alleges several state law claims against Vincent, Dobson, and Metro.  As a matter of course, Mellencamp's state claims against Metro will be dismissed.  Metro has sovereign immunity pursuant to Section 231 of the Kentucky Constitution and is entitled to judgment as a matter of law as to all state law claims.  KRS 61.101(1)(e); *Cullinan v. Jefferson County*, 418 S.W.2d 407, 409 (Ky. 1967) *overruled on other grounds*; *Yanero*; *Lexington-Fayette Urban County Government v. Smolcic*, 142 S.W.3d 128 (Ky. 2004).

Mellencamp alleges that Vincent and Dobson assaulted and battered him.  Defendants argue that Vincent and Dobson are entitled to qualified immunity.  Under Kentucky law, "Battery is any unlawful touching of the person of another, either by the aggressor, or by any substance set in motion by him or her."  *Andrew v. Begley*, 203 S.W.3d 165 (Ky. App. 2006).  Assault merely requires the threat of unwanted touching of the victim.  *Id.*  State and federal qualified immunity analysis is essentially identical. *Jefferson County Fiscal Court v. Peerce*, 132 S.W.2d 824, 837 (Ky. 2004).  Because there is no evidence that Vincent acted in bad faith, Mellencamp's claims against Vincent for assault and battery will be dismissed on the basis of qualified immunity.

For the reasons discussed above, Defendants' motion for summary judgment on Mellencamp's claims against Dobson for assault and battery will be denied.

Mellencamp's claims against Vincent and Dobson for intentional infliction of emotional distress – outrage – will be dismissed.  "[W]here an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie." *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 298-99 (Ky. App. 1993).  Mellencamp has not alleged that Vincent or Dobson acted for the sole purpose of causing him extreme emotional distress.  Therefore Mellencamp's claims for outrage against Vincent and Dobson are precluded by his claims for assault and battery.

Mellencamp alleges claims based on negligence, gross negligence, and the Kentucky Constitution.  However, he has failed to articulate either factual or legal bases for those claims; accordingly, they will be dismissed.

CONCLUSION

Because the court finds that there are disputed facts regarding Dobson's use of force, Mellencamp's Section 1983 excessive use of force and state assault and battery claims against Dobson survive Defendants' motion for summary judgment.  Defendants are entitled to summary judgment as a matter of law on the remainder of Mellencamp's claims.  Defendants' motion for summary judgment will be granted in part and denied in part.

A separate order will be entered herein this date in accordance with this opinion.